# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLENN WATTS and JIMMY JONES, ) | |
| ) | |
| Plaintiffs, ) | Case No. 06 C 3348 |
| ) | |
| v. ) | Judge Norgle |
| ) | |
| CYPRESS HILL, et al., ) | Magistrate Judge |
| ) | Martin C. Ashman |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Cypress Hill, et al. ("Defendants") have filed a motion asking this Court to strike the expert report of Albert H. Lyter III pursuant to Federal Rule of Civil Procedure 37(c)(1). Defendants argue that they are entitled to this relief because the report, submitted by Plaintiffs Glenn Watts and Jimmy Jones ("Plaintiffs"), was untimely and remains incomplete. This Court has the authority to decide this discovery motion under Judge Norgle's referral for discovery supervision pursuant to Local Rule 72.1. For the reasons that follow, Defendants' motion is granted.

## I. Background

In 1968, Plaintiffs co-authored a song called "Is It Because I'm Black?" which was recorded by soul vocalist Syl Johnson and released in August 1969 by Twinight Records, reaching number eleven on the R&B music charts that year. (Second Amended Compl., ¶¶ 14-16.) Some fourteen years later, the musical group Cypress Hill, a Defendant in this case, released an album called "Black Sunday." (*Id.*, ¶ 20.) One track from the "Black Sunday"

album, which ultimately went on to sell over 3.3 million copies, used elements of Plaintiffs' song. (*Id.*, ¶¶ 20-22.) Plaintiffs allege in this lawsuit that Defendants infringed their copyright in the song.

One of the issues in this case is whether Plaintiffs signed away their rights to the song in a "songwriters [sic] contract" dated October 7, 1969. (Second Amended Compl., ¶ 24.) To support their assertion that the document purporting to be an assignment of Plaintiffs' rights to "Is It Because I'm Black?" is a fraud, Plaintiffs retained Albert H. Lyter III ("Lyter") as an expert. According to the CV attached to his report, Lyter holds a Ph.D. in analytical chemistry from the University of North Carolina and has worked as President and Chief Scientific Officer of Federal Forensic Associates, Inc. for over twenty-five years. (Lyter Rpt., p. 3.) Lyter examined the putative 1969 contract and opined in his report that the text and the purported signatures are all made of the same type of ink, and that this ink was applied with an "inkjet" printing process that was not available until the late 1970s or early 1980s. (*Id.*, p. 1.)

Defendants raise two objections to the Lyter report. The first relates to timeliness. After this Court vacated the then-existing expert disclosure schedule in November 2007, the parties agreed among themselves that the deadline for expert disclosure would be January 31, 2008, with rebuttal reports due February 14, and depositions to be completed by February 28. (Defs.' Mot., Ex. 1.) Defendants claim that, although the Lyter report is dated January 3, 2008, it did not arrive at Defendants' counsel's office until late in the day on February 4. (*Id.* at 3.) In light of the agreed-upon schedule for expert discovery that was in place, Defendants argue that this delay was prejudicial. Plaintiffs do not deny that Defendants received the report after January 31, but

deny that there was any prejudice to Defendants, noting that they offered to compensate for any delay by extending Defendants' time to obtain a rebuttal report.

Defendants' second objection is substantive and deals with the completeness of the Lyter report. Defendants note that the report, as it was received on February 4, was a scant six paragraphs, with Mr. Lyter's CV attached but without any exhibits, test results, or other data. In response to an e-mail sent by Defendants' attorney on February 5, Plaintiffs provided approximately ten pages of additional documentation. (Defs.' Mot., Ex. 6.) As supplemented, the Lyter report consists of a two-page, six-paragraph "Report of Laboratory Examination;" a four-page CV; nine photographs of the document in question at various levels of magnification; one page with some handwritten notations; and a page displaying what the parties agree is a photocopied chromatography printout (to the uneducated eye, it looks like a slip of paper with one straight black line and some scribbled notations).

Defendants argue that the report remains incomplete, pointing to the lack of test data or even specific information about the tests that were performed. Plaintiffs contend that the report is complete because it indicates what tests Lyter performed and states his conclusions. If this was not enough, Plaintiffs argue, then the report certainly became complete when Plaintiffs' counsel forwarded the photographs and notations described above on February 6. Plaintiffs deny that Defendants are entitled to any additional data and argue that, at most, there was a two-day delay in providing the necessary materials. Because there was no prejudice, Plaintiffs believe that it would be inappropriate for the Court to strike Lyter's report as Defendants have requested.

## II. Discussion

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Parties that wish to use a retained expert at trial are obligated to provide "a written report" containing "a complete statement of all opinions to be expressed" by the expert and, crucially, "the basis and reasons therefore," including "the data or other information considered by the witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B). The Seventh Circuit has noted that "[t]he purpose of the report is to 'set forth the substance of the direct examination.'" *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007) (quoting the Advisory Committee Notes to Fed. R. Civ. P. 26). This means that the report should include whatever information the proponent will seek to elicit from the expert on the witness stand. The disclosure requirements of Rule 26(a)(2) are not empty formalities—they "are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). The data, information, and reasoning that support an expert's opinion may be crucial to the fact-finding mission, because Federal Rule of Evidence 702 limits the admission of expert opinion testimony to that which results from the application of "reliable principles and methods" to "sufficient facts or data." Fed. R. Ev. 702. *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

In light of the foregoing standards, the Lyter report is patently insufficient. The report begins: "A chemical and physical investigation, including magnification, microscopy, infrared reflectance and thin layer chromatography (TLC), was conducted upon [the Contract] with the following results." (Lyter Rept., p. 1.) At this point, one might expect that the report would

provide some additional data or information: what was observed under magnification and microscopy? What are "infrared reflectance" and "thin layer chromatography"? What data resulted when these tests were performed? What scientific or technical principles allowed Dr. Lyter to translate the data he gathered into conclusions? Instead, the introduction is followed by a series of conclusory statements. The crucial paragraph reads in its entirety:

> The text and "signatures" were found to have been applied to the paper through the inkjet process. This means that the "signatures" were not applied by the act of handwriting, but were digitally copied and subsequently applied to the exhibit through the act of printing via an inkjet printer. The same physical and chemical characteristics exist within both the text material and the "signatures". This is consistent with a single printing process of the exhibit in its entirety.

(Lyter Rept., p. 1)

There are two key conclusions in this paragraph: first, Lyter concludes that the ink got onto the paper via an inkjet printer. Second, Lyter opines that the ink in the "signatures" and the ink in the body of the document have the same "physical and chemical characteristics." Nowhere in the report does Lyter explain what the results of his various tests were, or which tests were relevant to which conclusions, or how the data obtained support his conclusions. This report provides no help to the reader in attempting to understand Lyter's methodology, which is crucial in determining the admissibility of expert testimony at trial. As the Seventh Circuit indicated in the passage quoted above, one purpose of Rule 26(a)(2)(B) disclosure is to avoid surprise. On the basis of this report, Lyter's methodology could be anything at all, reliable or unreliable. Furthermore, as things stand, Defendants would have severe difficulty obtaining a rebuttal report. No reputable expert could opine that Lyter misinterpreted data or applied the wrong methodology without knowing what data and what methodology he used. It is true that Defendants could

likely obtain the missing information by deposing Dr. Lyter, but the burden is not on them to do so: an expert report should be "complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial." *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998).

Plaintiffs' responses to Defendants' arguments are unpersuasive. First, Plaintiffs note that Defendants' counsel was invited to attend the testing process, but declined to do so. The Court cannot see the relevance of this information. Even if Defendants' attorney had been present, as a non-scientist he could not reasonably be expected to understand what tests were being performed, their results, and the translation of the results into conclusions via scientific principles. Accepting Plaintiffs' argument would essentially allow the proponent of expert testimony to shift most of the burden of the expert report to the other party simply by inviting opposing counsel to observe its expert at work. Rule 26(a)(2)(B) clearly places the burden of expert report disclosure on the proponent of expert testimony, and provides no support for Plaintiffs' position.

The Court also rejects Plaintiffs' argument that they cured any deficiency when they supplemented the Lyter report in response to Defendants' February 5 e-mail. The additional materials Plaintiffs provided are: nine photographs, at various levels of magnification, of the document under examination; one page of handwritten notes; and the aforementioned strip of paper with a thin black line running vertically the length of the page, apparently the result of a chromatography test. This is insufficient. The Rule specifically contemplates that an expert report will include "the basis and reasons" for the opinions it sets out. The additional materials submitted by Plaintiffs may be data, but on their own they are silent. What was needed was Lyter's reasoning. Why, looking at the magnified segments of paper, did he conclude that the ink

likely obtain the missing information by deposing Dr. Lyter, but the burden is not on them to do so: an expert report should be "complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial." *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998).

Plaintiffs' responses to Defendants' arguments are unpersuasive. First, Plaintiffs note that Defendants' counsel was invited to attend the testing process, but declined to do so. The Court cannot see the relevance of this information. Even if Defendants' attorney had been present, as a non-scientist he could not reasonably be expected to understand what tests were being performed, their results, and the translation of the results into conclusions via scientific principles. Accepting Plaintiffs' argument would essentially allow the proponent of expert testimony to shift most of the burden of the expert report to the other party simply by inviting opposing counsel to observe its expert at work. Rule 26(a)(2)(B) clearly places the burden of expert report disclosure on the proponent of expert testimony, and provides no support for Plaintiffs' position.

The Court also rejects Plaintiffs' argument that they cured any deficiency when they supplemented the Lyter report in response to Defendants' February 5 e-mail. The additional materials Plaintiffs provided are: nine photographs, at various levels of magnification, of the document under examination; one page of handwritten notes; and the aforementioned strip of paper with a thin black line running vertically the length of the page, apparently the result of a chromatography test. This is insufficient. The Rule specifically contemplates that an expert report will include "the basis and reasons" for the opinions it sets out. The additional materials submitted by Plaintiffs may be data, but on their own they are silent. What was needed was Lyter's reasoning. Why, looking at the magnified segments of paper, did he conclude that the ink

was from a printer? Perhaps there are distinctive markings from which an expert can discern the printing's provenance, but no information of this sort is included in the report as supplemented. The same applies to the chromatography "line." At oral argument, Plaintiffs' counsel attempted, based on his own research, to explain to the Court why an expert like Lyter would look at such a result and conclude that only one type of ink was present in the document. This attempt to establish a chain of reasoning and methodology should have come from Dr. Lyter, not counsel, and should have been included in the report.

Federal Rule of Civil Procedure 37(c)(1) provides that when a party "without substantial justification fails to disclose information required by Rule 26(a) . . . [the party] is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). The sanction of exclusion "is automatic and mandatory unless the party to be sanctioned can show that its violation . . . was either justified or harmless." *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000) (internal quotes omitted). It is clear from the quoted passages that the burden is on the party being sanctioned to demonstrate a substantial justification for its failure to follow the rules or show that the failure was harmless.

Plaintiffs fail on both counts. Their harmlessness arguments are premised on the notion that the Lyter report, if it was ever incomplete, became complete when supplemented by the additional materials provided on February 6. Plaintiffs argue that, having been delayed only two days (actually six, since the deadline for expert disclosure was January 31, and the initial incomplete report was already four days late), Defendants still had ample time to obtain a rebuttal expert. However, the Court has rejected the argument that Plaintiffs' supplemental materials rendered Lyter's report complete. By extension, Plaintiffs' argument that the two-day delay was

not prejudicial fails, because the report remains incomplete and expert discovery has since closed. Plaintiffs also fail to show any justification for their failure to submit a complete report. As discussed above, the fact that they invited Defendants' counsel to attend Dr. Lyter's testing is inconsequential and does not justify their failure to provide a complete report. Plaintiffs do not advance any other argument regarding justification. Therefore, the Court finds that the failure to provide a complete Rule 26(a)(2)(B) report was unjustified, and the proper sanction is exclusion. While Plaintiffs cite Seventh Circuit precedent stating that "the punishment [for failures to disclose] should fit the crime," *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005), this does not sway the Court's opinion. In *Fidelity*, the sanctioned party failed to disclose documents considered, but apparently not relied on, by an expert, which could have been relevant for impeachment purposes. *Id.* at 750. Here, the failure is much more egregious. Plaintiffs have given Defendants nothing at all to work with, and have intransigently insisted that they need do nothing more since this issue arose over one month ago, causing prejudice to Defendants in the process. Therefore, the Court is confident that the "punishment" of exclusion is a fitting one for Plaintiffs' "crime."

Because the Court finds that the Lyter report should be stricken based on its incompleteness, it need not consider Defendants' alternative argument that the report should be stricken as untimely.

## III. Conclusion

For the reasons stated above, Defendants' motion to strike the expert report of Albert H. Lyter III ("the Lyter report") is granted.

ENTER ORDER:

*[signature]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: March 12, 2008.